New American Rest v. WDF Inc. (Pltf Statement Of Elements) 05.04.2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

NEW AMERICAN RESTORATION, INC.,                    Civil Action No.: 10-cv-3638(RMB)

                            Plaintiff,

      against-

WDF, INC. and FIDELITY AND DEPOSIT COMPANY
OF MARYLAND,

                            Defendants.
-----------------------------------------------------------------X

## PLAINTIFF'S STATEMENT OF THE ELEMENTS OF ITS CLAIMS AND SUMMARY OF FACTS RELIED UPON

Plaintiff NEW AMERICAN RESTORATION, INC. ("New American" or "Plaintiff") respectfully submits this statement of the elements of its claims and a summary of the facts relied upon.

This is an action for breach of contract arising from the defendant WDF's ("Defendant" or "WDF") failure to pay New American for asbestos abatement work, labor and services provided by New American in connection with two public school modernization / renovation projects (I.S. 10/P.S. 200 ("I.S. 10 Project") and P.S. 4/171 ("P.S. 4 Project")) in New York City.

The "owner" of the properties is the New York City School Construction Authority ("S.C.A."). WDF is the general contractor. New American was a subcontractor.

The amounts claimed due under the base contracts for each of the Projects were paid after the commencement of this action. The remaining dispute revolves around the value of the additional, change order work performed by New American at each school.

The elements of a cause of action for breach of contract are: the existence of a contract, the plaintiff's performance under the contract, the defendant's breach of that contract, and resulting damages to the plaintiff. P&E Properties, Inc. v. United Natural Foods, Inc., 713 F.

Supp. 2d 262 (Dist. Ct. SDNY 2010); JP Morgan Chase v. J.H. Elec. of N.Y., 69 A.D.3d 802,

893 N.Y.S.2d 237 (2nd Dept. 2010).

In the case at bar, with respect to the P.S. 4 Project, there is a written contract between

the Plaintiff and WDF, specifying the original scope of the work, as modified by change orders

(sometimes referred to as "Notices of Direction" ("N.O.D.s")).

There can be no serious dispute that New American performed the work asked of it. The

change order documents show that WDF directed New American to do certain work outside the

scope of the base contracts' specifications. Plaintiff has, among other things, invoices,

correspondences, its daily log books (which evidence which of its workers did what specific

job(s) at the worksite on a daily basis) and payroll records to show that Plaintiff was instructed to

do certain additional work, that specific employees of Plaintiff did the work on particular days,

that Plaintiff incurred specific expenses in carrying out the work, that Plaintiff billed for such,

that the Defendant failed to pay what was billed, and that as a result, Plaintiff has incurred

damages. Plaintiff's damages are readily apparent as its work force are union members, who are

paid at specified rates for the work they do; and much of the materials necessary to perform the

specific jobs are purchased before the work is commenced. The cost of labor is evidenced by the

payroll records and the materials expenses (such as plastic sheeting, containment tents, gloves,

tools, etc.) are evidenced by expense statements. In other words, Plaintiff has "advanced" all its

costs and expenses of performing the work, in anticipation of being paid back what it advanced,

together with a modest additional percentage (usually 15%) to cover its general overheard and

profit.

For P.S. 4, among other things, New American was directed (as referenced in documents

such as N.O.D. # 6) to do additional core drilling into floors and walls in the school, so that the

material behind the surface could be tested for asbestos, and if found to exist, to be removed from the premises and properly disposed of at a licensed disposal facility.

For P.S. 10, among other things New American was directed to remove certain piping in the ceilings, as well as the ceiling tiles themselves. It was believed that the piping was encased in asbestos, which over the course of time, had become loose, and some portion of which had fallen off the pipes and onto the top side of the ceiling tiles. Plaintiff was instructed to remove the pipes and ceiling tiles under asbestos abatement procedures, which are more difficult to perform, and more costly, than general interior demolition work. New American performed that work. The material was put into special containers and then carted to an appropriate waste facility. This is borne out by the records of the quantities of material removed and shipped for disposal.

Work performed by New American under abatement procedures required the implementation of certain safety protocols and on-site environmental monitoring and testing by a third party service employed by the S.C.A.

The amount due Plaintiff (as reflected in New American's invoices to WDF, which were not paid) for change order work at the P.S. 4 Project is $79,101.09 and the amount due Plaintiff for change order work at the I.S. 10 Project is $294,874.86.

New American is not in possession of an executed version of the purported contract with WDF for the work New American performed on the I.S. 10 Project. To date, WDF has not produced an executed version of that contract. Thus, there may very well be no signed contract between the parties for the I.S. 10 Project.

Although there may not be a signed contract regarding I.S. 10, that does not mean that there is no enforceable agreement between the parties. Under New York law, a contract need not

be signed to be enforceable. <u>Consarc Corp. v. Marine Midland Bank, N.A.</u>, 996 F. 2d 568 (2d Cir. 1993). In the absence of a signed writing, the parties can demonstrate the existence of a contract by showing objective manifestations of their intent. <u>Brown Bros. Elec. Contractors, Inc. v. Beam Construction Corp.</u>, 41 N.Y.2d 397, 393 N.Y.S. 2d 330 (1977); <u>Asesores Y Consejeros Aconsec Cia. S.A. v. Global Emerging Markets North America. Inc.</u>, _____ F. Supp. 2d _____, 2012 WL 86342 (Dist. Ct., SDNY 2012).

Here, it is manifest that the parties conducted themselves as though there was a signed contract between them regarding New American's work on the I.S. 10 Project.

The S.C.A. and WDF directed New American to render certain services which were not within the scope of the purported "base" contract. New American was requested to perform certain additional change order work under abatement procedures (see, e.g., N.O.D. #6), and they complied. Although New American billed WDF for such additional work, they were not paid therefor.

In the alternative, Plaintiff submits that it may make a claim for the I.S. 10 work upon the basis of quantum meruit. The elements of a claim for quantum meruit are: the performance of services in good faith, the acceptance of those services by the person to whom they are rendered, an expectation of compensation therefor, and the reasonable value of the services. <u>Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.</u>, 418 F.3d 168 (2d Cir. 2005); <u>Revson v. Cinque & Cinque, P.C.</u>, 221 F.3d 59 (2d Cir. 2000); <u>Liddle & Robinson, LLP v. Garrett</u>, 720 F. Supp. 2d 417 (Dist. Ct. SDNY 2010); <u>Pulver Roofing Co., Inc. v. SBLM Architects, P.C.</u>, 65 A.D. 3d 826, 884 N.Y.S. 2d 802 (4th Dept. 2009).

In the case at bar, New American performed its services in good faith; those services were accepted by both the defendant and the S.C.A.; New American had an expectation of

4

compensation for those services; and the reasonable value of those services are set forth in New American's change order documents, especially its invoices.

Further, New American is not required to show that WDF received a benefit in order to recover in quantum meruit. It is sufficient that the work was rendered for the benefit of S.C.A. Pulver Roofing Co., Inc. v. SBLM Architects, P.C., supra.

Both the S.C.A. and WDF knew that New American was performing the additional work, and accepted those services, and benefitted from New American's provision of its services.

New American had, and has, an expectation of compensation for the additional work it performed. The Plaintiff submits that value of the change order work performed at the I.S. 10 Project is $294,874.86.

Dated: New York, New York
       May 4, 2012

                               Respectfully submitted,

                               THE ABRAMSON LAW GROUP, PLLC
                               Attorneys for Plaintiff

By:    _____
                               Mitchell Shenkman, Esq. (MS-4493)
                               570 Lexington Avenue, 23rd Floor
                               New York, New York 10022
                               (212) 686-4401